IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Grant Francis Treiber, ) | C/A No.: 1:12-2242-SVH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | ORDER |
| Carolyn W. Colvin, Acting ) | |
| Commissioner of Social Security ) | |
| Administration,[1] ) | |
| ) | |
| Defendant. ) | |
| ) | |

This appeal from a denial of social security benefits is before the court for a final order pursuant to 28 U.S.C. § 636(c), Local Civil Rule 73.01(B) (D.S.C.), and the Honorable Cameron McGowan Currie's order dated September 26, 2012, referring this matter for disposition. [Entry #6]. The parties consented to the undersigned United States Magistrate Judge's disposition of this case, with any appeal directly to the Fourth Circuit Court of Appeals.

Plaintiff files this appeal pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act") to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the claim for disability insurance benefits ("DIB"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether she applied the proper legal standards.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the defendant in this lawsuit.

For the reasons that follow, the court reverses and remands the Commissioner's decision for further proceedings as set forth herein.

I.   Relevant Background

   A.   Procedural History

On November 12, 2008, Plaintiff filed applications for DIB in which he alleged his disability began on September 14, 1999. Tr. at 135–39. His application was denied initially and upon reconsideration. Tr. at 80–81. On August 11, 2010, Plaintiff had a hearing before Administrative Law Judge ("ALJ") Frances W. Williams. Tr. at 30–79 (Hr'g Tr.). At the hearing, Plaintiff amended his alleged onset date to September 1, 2007. Tr. at 36–37. The ALJ issued an unfavorable decision on September 10, 2010, finding that Plaintiff was not disabled within the meaning of the Act. Tr. at 12–24. Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Tr. at 1–3. Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on August 7, 2012. [Entry #1].

   B.   Plaintiff's Background and Medical History

      1.   Background

Plaintiff was 49 years old at the time of the hearing. Tr. at 37. He obtained a graduate equivalency diploma. *Id.* His past relevant work ("PRW") was as a police officer, golf course landscaper, grocery store bagger, janitor, hot dog stand operator, and security guard. Tr. at 66–68. He alleges he has been unable to work since September 1, 2007. Tr. at 36–37.

2

2. Medical History[2]

In March 1998, while on duty as a police officer, Plaintiff was involved in a head-on car accident resulting in a herniated disc in his lumbar spine. Tr. at 174, 247, 286, 296–97. He underwent a surgical disc excision at L5–S1 on September 8, 1998. Tr. at 286. Plaintiff continued to have difficulty with pain after his surgery and was unable to continue working as a police officer. Tr. at 277. A cervical CT scan on February 11, 2006, showed a disc protrusion and annular tear at C4–5 as well as degenerative disc disease and spondylosis at C5–6. Tr. at 320–21. X-rays of the lumbar spine on February 4, 2009, showed loss of the normal lordotic curve possibly due to muscle spasm, marked disc narrowing at L4–5, moderate disc narrowing at L5–S1, advanced degenerative disc disease at L4–5 and L5–S1, and advanced degenerative facet joint changes at L5–S1. Tr. at 457. A bone survey on August 26, 2009, showed fairly marked narrowing at L4–5 and anterior osteophytes at the lower lumbar spine as well as narrowing of the sacroiliac joints. Tr. at 514.

In early 2007, Plaintiff reported migratory joint pain and severe fatigue. Tr. at 395. He was diagnosed with fibromyalgia and chronic fatigue immune dysfunction syndrome. Tr. at 393–96. In 2009, Plaintiff was diagnosed with rheumatoid arthritis. Tr. at 525–26. Other medical evidence shows that Plaintiff has also been treated for obstructive sleep apnea (Tr. at 436, 452–53, 596), has a moderate to moderately severe

---

[2] Because the undersigned recommends remand based on an error of law, Plaintiff's medical history and hearing testimony are not summarized in detail.

hearing loss for which hearing aids have been recommended (Tr. at 245), and has a history of depression (Tr. at 363–64).

    C.    The Administrative Proceedings

        1.    Plaintiff's Hearing Testimony

At the hearing on August 11, 2010, Plaintiff testified that he had constant pain in his back and left leg and also had flare-ups of "traveling" pain in multiple joints, especially in his hands, shoulders, and knees. Tr. at 47–48. He stated that he has taken Tramadol for years, but that it causes him to be very fatigued. Tr. at 49–51. He stated that he was unable to take Methotrexate (prescribed for his rheumatoid arthritis) or continue seeking treatment at the Fibromyalgia & Fatigue Center because he had no insurance and could not afford the medication or treatment. Tr. at 49–50.

He testified that he spends the day watching television, working some in the yard, occasionally helping with light household chores, and occasionally going to car shows at the local Kmart for fifteen to twenty minutes. Tr. at 51–52. He said that when he mows the yard, he can only mow on a rider mower for about a half hour at a time, has to take a break for about an hour because of his pain, and takes all day to finish the yard. Tr. at 52, 54. He stated he goes to church for about 45 minutes once a month and occasionally has coffee with a friend. Tr. at 53. He testified that he has to take Tramadol after waking up, and it takes one to two hours for the medication to take effect so that he can get out of bed. Tr. at 56. He stated that because of his back pain, he limits his lifting to five pounds. Tr. at 56–57. He estimated that his pain and medication side effects would cause him to lose focus every thirty minutes or so. Tr. at 63–64.

4

2. The ALJ's Findings

In her decision dated September 10, 2010, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2011.
2. The claimant has not engaged in substantial gainful activity since September 1, 2007, the amended alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).
3. The claimant has the following severe impairments: degenerative disc disease with residual mechanical back pain following left hemi-laminectomy in September 1998, depression, and sensorineural hearing loss (20 CFR 404.1520(c)).
4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work except that he can occasionally lift and/or carry 10 pounds and frequently lift and/or carry less than 10 pounds; he can occasionally stoop, twist, crouch, kneel, crawl, and climb stairs or ramps; he must avoid hazards such as heights and dangerous machinery; he cannot climb ladders, ropes, or scaffolds; he cannot communicate in environments with "loud" background noises (as defined in the SOC); he must have less than occasional interaction with the public and less than occasional team-type interaction with coworkers; and he can only occasionally work with supervisors if interpersonal interaction is necessary to discuss what is required to perform a job.
6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).
7. The claimant was born on January 3, 1961; and was 46 years old on the amended alleged disability onset date, and is currently 49 years old, which is defined as a younger individual age 18–49 (20 CFR 404.1563).
8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
9. The claimant has acquired work skills from past relevant work (20 CFR 404.1568).
10. Transferability of previously acquired job skills is not a material issue. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs existing in significant numbers in the

    national economy that the claimant can perform even if he does not have transferable job skills (20 CFR 404.1560(c), 404.1566 and 404.1568(d)).

  11. The claimant has not been under a disability, as defined in the Social Security Act, from June 26, 2006 through the date of this decision (20 CFR 404.1520(g)).

Tr. at 14–24.

II. Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1) the ALJ erred in rejecting the opinion of Plaintiff's treating physician;

2) the ALJ failed to properly evaluate Plaintiff's subjective complaints; and

3) the ALJ erred in finding that Plaintiff's rheumatoid arthritis was not a severe impairment.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in her decision.

 A. Legal Framework

  1. The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series

of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[3] (4) whether such impairment prevents claimant from performing PRW;[4] and (5) whether the impairment prevents him from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the

---

[3] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[4] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

7

work.  *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982).  The claimant bears the burden of establishing his inability to work within the meaning of the Act.  42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy.  To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW.  *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002).  If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work.  *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146. n.5 (1987) (regarding burdens of proof).

        2.      The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party."  42 U.S.C. § 405(g).  The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case.  *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

8

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

    B.    Analysis

        1.    Credibility Analysis

Plaintiff argues that the ALJ failed to conduct any meaningful credibility analysis. [Entry #12 at 13]. He contends that the ALJ did not explain which of his impairments could reasonably be expected to cause his alleged symptoms, which allegations the ALJ accepted or rejected, or her reasons for doing so. *Id.* at 12–13. The Commissioner responds that the ALJ reasonably assessed and provided a sufficiently specific analysis of Plaintiff's subjective complaints in light of the record as a whole. [Entry #14 at 14].

Prior to considering a claimant's subjective complaints, an ALJ must find a claimant has an underlying impairment that has been established by objective medical evidence that would reasonably be expected to cause subjective complaints of the severity and persistence alleged. *See* 20 C.F.R. § 404.1529; SSR 96-7p; *Craig*, 76 F.3d 585, 591–96 (4th Cir. 1996) (discussing the regulation-based two-part test for evaluating pain). The first part of the test "does not . . . entail a determination of the intensity, persistence, or functionally limiting effect of the claimant's asserted pain." 76 F.3d at 594 (internal quotation omitted). Second, and only after claimant has satisfied the threshold inquiry, the ALJ is to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." *Id.* at 595. This second step requires the ALJ to consider the record as a whole, including both objective and subjective evidence, and SSR 96-7p cautions that a claimant's "statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." SSR 96-7p, ¶ 4.

If an ALJ rejects a claimant's testimony about his pain or physical condition, she must explain the bases for such rejection to ensure that the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir. 1989). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons

for that weight." SSR 96-7p, ¶ 5. In evaluating the intensity, persistence, and limiting effects of an individual's symptoms and the extent to which they limit an individual's ability to perform basic work activities, adjudicators are to consider all record evidence, which can include the following: the objective medical evidence; the individual's ADLs; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; any measures other than treatment the individual uses to relieve pain or other symptoms; and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p.

Here, after setting forth the applicable regulations, the ALJ summarized Plaintiff's statements regarding his symptoms and activities of daily living. Tr. at 21–22. The ALJ then made the following finding:

> The claimant's statements and testimony regarding the severity of his pain and other subjective symptoms with resulting function limitations are not consistent, they are not consistent with evidence regarding the claimant's activities of daily living, and they are not fully consistent with the medical evidence. After considering all of the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

Tr. at 22.

11

Plaintiff contends the foregoing credibility analysis is insufficient.  The court is constrained to agree.  The Commissioner argues that the ALJ was only required to "'minimally articulate' [her] reasoning so as to 'make a bridge' between the evidence and [her] conclusions."  [Entry #14 at 18 (quoting *Jackson v. Astrue*, C/A No. 8:08-2855, 2010 WL 500449, at *10 (D.S.C. Feb. 5 2010)].  While the Commissioner accurately states the law, there is no bridge between the evidence and the ALJ's conclusion in this case.  The ALJ set forth summaries of both the medical records and Plaintiff's testimony, which the Commissioner seeks to rely on in support of the ALJ's credibility determination.  However, the reasons offered by the ALJ in support of the determination are conclusory and, while support for them may well exist, the ALJ has failed to state them specifically enough "to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  *See* 96-7p.  As currently written, the ALJ's decision requires the court to sift through the evidence and speculate as to the evidence on which the ALJ intended to rely in support of her credibility determination.

For the foregoing reasons, the undersigned concludes that the ALJ's credibility determination was faulty and remands this matter for further consideration.  On remand, the ALJ is directed to assess Plaintiff's credibility in accordance with 20 C.F.R. § 404.1529 and SSR 96-7p.  The ALJ should specifically consider and address the alleged side effects of Plaintiff's medications as well as his prior work record and efforts to work.

2.  Plaintiff's Remaining Allegations of Error

Because the court is remanding this matter based on the ALJ's failure to apply the proper legal standards in assessing Plaintiff's credibility, Plaintiff's remaining allegations of error are not addressed in detail. On remand, however, the ALJ should reconsider whether Plaintiff's rheumatoid arthritis is a severe impairment. In so doing, the ALJ should bear in mind that an impairment is not severe only if it is a slight abnormality that has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984). The court notes that the ALJ offered several valid reasons for discounting the opinion of Dr. Kang.

III.  Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court cannot determine that the Commissioner's decision is supported by substantial evidence. Therefore, the undersigned reverses and remands this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

*Shiva V. Hodges*

January 16, 2014
Columbia, South Carolina

Shiva V. Hodges
United States Magistrate Judge